## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21458-ELFENBEIN

**JODI SUE ATKISON**,

      Plaintiff,

v.

**FRANK J. BISIGNANO**,[1]
**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

_____/

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court on Plaintiff Jodi Sue Atkison's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. [8]. Defendant Frank J. Bisignano, Commissioner of the Social Security Administration, filed a cross Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law ("Defendant's Motion"), ECF No. [9], to which Plaintiff filed a Reply in opposition (the "Reply"), ECF No. [10]. The Parties have not opted out of the undersigned's jurisdiction and, therefore, have consented to it. *See* ECF No. [5] at 2 ("If no party objects to Magistrate Judge jurisdiction within this timeframe, then this case will proceed in full before the undersigned Magistrate Judge for all purposes, including entering any dispositive order and final judgment."). Having reviewed the Parties' filings, the record, and the relevant law, Plaintiff's Motion, **ECF No. [8]**, is **DENIED**, Defendant's Motion, **ECF No. [9]**, is **DENIED**, and the Administrative Law Judge's Decision ("ALJ's

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this action.

Decision") is **AFFIRMED**.

## I.    BACKGROUND

On August 10, 2020, Plaintiff applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging "that she had become disabled on June 5, 2020." *See* ECF No. [8] at 4; ECF No. [7] at 112.[2]  She asserted a "primary diagnosis" of "Depressive, Bipolar and Related Disorders" and a secondary diagnosis of "Anxiety and Obsessive-Compulsive Disorders." *See* ECF No. [7] at 112.  She based her claim on "the following illnesses, injuries, or conditions: depression, extreme anxiety, fatigue, short term inability to remember, suicidal thoughts, unable to complete simple tasks, uncontrollable unpleasant thoughts." *See* ECF No. [7] at 113.

The Social Security Administration ("SSA") initially denied Plaintiff's disability application on March 15, 2023, and again upon reconsideration on May 4, 2023.  *See* ECF No. [7] at 111, 121–22. On May 24, 2023, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on November 7, 2023. *See* ECF No. [7] at 76, 148.  The ALJ "issued an unfavorable decision denying Plaintiff's claim on January 18, 2024." *See* ECF No. [8] at 4; ECF No. [7] at 43.  The Appeals Council denied Plaintiff's request for review on February 21, 2024, which made the ALJ's decision final. *See* ECF No. [7] at 12.

## II.    LEGAL STANDARDS

### A.    <u>Judicial Review of Claims under the Act</u>

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination.  *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019).

---

[2] Citations are to the blue docket numbers stamped in the top right corner of the electronic filing.

"Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (quotation marks omitted). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [ALJ]." *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if the evidence leans against the ALJ's decision, courts must affirm the decision if substantial evidence supports it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (citation omitted)); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).

### B.    Regulatory Framework for Weighing Medical Opinions

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in her ability to "perform physical demands of work activities"; "perform mental demands of work activities"; "perform other demands of work, such as seeing, hearing, or using other senses"; and "adapt to environmental conditions, such as temperature extremes or fumes." *Id.* § 404.1513(a)(2). Relevant here, "mental demands of work activities" means "understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii).

When evaluating "medical opinions and prior administrative medical findings," the ALJ

"will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's "medical sources," *id.* § 404.1520c(a), but she "will articulate in" her "determination or decision how persuasive" she finds "all of the medical opinions and all of the prior administrative medical findings in" the claimant's "case record," *id.* § 404.1520c(b). In doing so, the ALJ primarily considers four factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant[3]; and (4) specialization. *Id.* § 404.1520c(c)(1)–(4); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (Section 404.1520c(c) "provides several factors for determining what weight to give a claimant's proffered medical opinions. Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, [and] the physician's specialty."). The ALJ also considers "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of" the SSA's "disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5); *see also Harner*, 38 F.4th at 897 (noting the ALJ considers "other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability").

Of these factors, supportability and consistency "are the most important" when determining

---

[3] The relationship with the claimant factor "combines consideration of" the "length of time a medical source has treated" the claimant and the "frequency" of visits, both of which "may help demonstrate whether the medical source has a longitudinal understanding of" the impairments. *See* 20 C.F.R. § 404.1520c(c)(3). This factor also considers the "purpose for treatment" and the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories," both of which "may help demonstrate the level of knowledge the medical source has of" the impairments. *Id.* § 404.1520c(c)(3). Finally, this factor considers whether the medical source has examined the claimant, which may give the medical source "a better understanding of" the impairments "than if the medical source only reviews evidence in" the claimant's "folder." *Id.* § 404.1520c(c)(3).

the persuasiveness of a "medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2).  Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" — the "more relevant" they are, the "more persuasive" they will be.  *Id.* § 404.1520c(c)(1).  Consistency refers to how consistent "a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim" — the "more consistent" they are, the "more persuasive" they will be.  *Id.* § 404.1520c(c)(2).  Because they are the most important factors, the ALJ "will explain how" she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in" her "determination or decision."  *Id.* § 404.1520c(b)(2).  And the ALJ "may, but [is] not required to, explain how" she considered the other factors.  *See id.*; *Gary-Lowe v. O'Malley*, No. 22-CV-22379-JB, 2024 WL 1178658, at *5 (S.D. Fla. Feb. 12, 2024).

> **C.**   **The Sequential Evaluation for Disability Claims**

To be eligible for DIB, a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423(a)(1)(E), (d).  Claimants over the age of 18 are "considered to be disabled" if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  *See id.* § 1382c(a)(3)(A).  When determining a claimant's eligibility for DIB, the ALJ employs a "five-step sequential evaluation."  *See* 20 C.F.R. § 404.1520(a)(4).  If the ALJ "can find that" a claimant is "disabled or not disabled at a step," she makes her "determination or decision and" does "not go on to the next step."  *See id.*  But if the ALJ "cannot find that" a claimant is "disabled or not

disabled at a step," she goes "on to the next step."  *See id.*

At the ***first step***, the ALJ considers a claimant's "work activity, if any." *Id.* § 404.1520(a)(4)(i).  If the claimant is "doing substantial gainful activity," the ALJ will find the claimant is "not disabled." *Id.*; *see also id.* § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must go on to step two. At the ***second step***, the ALJ considers "the medical severity" of a claimant's "impairment(s)." *Id.* § 404.1520(a)(4)(ii).  An "impairment or combination of impairments" is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." *See id.* § 404.1520(c).  When making this determination, the ALJ does not consider a claimant's "age, education, and work experience." *Id.*  If a claimant does not have "a severe medically determinable physical or mental impairment" or "combination of impairments" that either "is expected to result in death" or has lasted or is "expected to last for a continuous period of at least 12 months," the ALJ will find the claimant is "not disabled." *See id.* § 404.1520(a)(4)(ii); *id.* § 404.1509 (labelling the requirement that an impairment be expected to result in death or have lasted/be expected to last for a continuous period of at least 12 months the "duration requirement").  "However, it is possible for" a claimant "to have a period of disability for a time in the past even" if she does not "have a severe impairment" at the time of the ALJ's evaluation. *See id.* § 404.1520(c).

If the ALJ concludes that a claimant has a severe impairment, then the ALJ moves on to step three. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c.  At the ***third step***, the ALJ again considers the medical severity

of a claimant's impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii). This time, the ALJ evaluates whether a claimant's severe impairment "meets or equals" an impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.*; *Phillips*, 357 F.3d at 1238. If a claimant has "an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," the ALJ will find the claimant "disabled without considering" her "age, education, and work experience." *See* 20 C.F.R. § 404.1520(d). As the Eleventh Circuit and the Supreme Court have explained, "the idea is that the listings 'streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.'" *Phillips*, 357 F.3d at 1238 (alteration adopted, quoting *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

If a claimant's impairment does not meet or equal an impairment listed in Appendix 1, then the ALJ moves on to step four. *See* 20 C.F.R. § 404.1520(e). At the ***fourth step***, the ALJ "will assess and make a finding about" the claimant's "residual functional capacity" ("RFC") "based on all the relevant medical and other evidence in" the claimant's "case record." *Id.*; *see also id.* § 404.1520(a)(4)(iv). A claimant's RFC "is the most" the claimant "can still do" in a "work setting . . . despite" the "physical and mental limitations" caused by the claimant's "impairment(s), and any related symptoms, such as pain."[4] *See* 20 C.F.R. § 404.1545(a)(1). The ALJ uses the RFC

---

[4] In making the RFC determination, the ALJ "will consider all of" a claimant's "medically determinable impairments of which" she is "aware, including . . . medically determinable impairments that are not severe." *See* 20 C.F.R. § 404.1545(a)(2). The ALJ will also consider the "total limiting effects" of all the claimant's "impairment(s) and any related symptoms," because "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone." *See id.* § 404.1545(e). "In general," a claimant is "responsible for providing the evidence" the ALJ "will use to make a finding about" her RFC. *See id.* § 404.1545(a)(3). But before the ALJ determines a claimant is not disabled, the ALJ is "responsible for developing" the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help" the claimant "get medical reports from" the claimant's "own medical sources." *Id.* The ALJ "will consider any statements about what" the claimant "can still do that have been provided by medical sources, whether or not they are based on formal

assessment "to determine if" the claimant can do her "past relevant work." *See id.* § 404.1520(e). The ALJ does this by comparing the RFC assessment "with the physical and mental demands of" a claimant's "past relevant work." *See id.* § 404.1520(f). If a claimant "can still do this kind of work," the ALJ will find the claimant is "not disabled." *See id.*

If the ALJ concludes a claimant cannot do her past relevant work because she has a severe impairment, or if a claimant does "not have any past relevant work," then the ALJ moves on to step five. *See id.* §§ 404.1520(g)(1), 404.1560(c). At the ***fifth step***, the ALJ considers the claimant's RFC "together with" her "age, education, and work experience" — that is, her "vocational factors" — to "see if" she "can make an adjustment to other work." *See id.* § 404.1520(a)(4)(v), (g)(1). "At step five the burden of going forward shifts to the [Commissioner] to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quotation marks omitted). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* If the claimant "can make an adjustment to other work," the ALJ will find the claimant "not disabled." *See* 20 C.F.R. § 404.1520(a)(4)(v), (g)(1). But if the claimant "cannot make an adjustment to other work," the ALJ will find the claimant is "disabled." *See id.* § 404.1520(a)(4)(v), (g)(1).

## III.   THE ALJ'S DECISION

ALJ Lornette Reynolds issued an unfavorable decision on January 18, 2024, denying

---

medical examinations" and "will also consider descriptions and observations of" a claimant's limitations from her impairments, "including limitations that result from" the claimant's "symptoms, such as pain, provided by" the claimant or her "family, neighbors, friends, or other persons." *Id.* With these details, the ALJ evaluates a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." *See id.* § 404.1545(a)(4), (b)–(d) (describing how the ALJ assesses a claimant's physical, mental, and other abilities).

Plaintiff's claim for DIB. *See* ECF No. [7] at 30, 43.  In reaching this conclusion, ALJ Reynolds employed the SSA's five-step sequential evaluation outlined above.

At ***step one***, ALJ Reynolds concluded that Plaintiff had "not engaged in substantial gainful activity since June 5, 2020, the alleged onset date."  *See* ECF No. [7] at 31.  At ***step two***, ALJ Reynolds concluded that Plaintiff had "the following severe impairments: depression and anxiety." *See* ECF No. [7] at 31. ALJ Reynolds also concluded that Plaintiff had three "medically determinable impairments" that were "non-severe": "hypothyroidism," "alcohol use disorder," and "being overweight."  *See* ECF No. [7] at 31.  And ALJ Reynolds concluded that Plaintiff's "alleged mild neurocognitive disorder is not medically determinable because the impairment(s) cannot be established by objective medical evidence."  *See* ECF No. [7] at 32.

At ***step three***, ALJ Reynolds concluded that Plaintiff's impairments failed "to meet or equal the criteria of any" impairment listed in Appendix 1 of the Regulations. *See* ECF No. [7] at 32.  In making this finding, the ALJ considered the listings that most closely aligned with Plaintiff's alleged impairments: listing 12.04 ("Depressive, bipolar and related disorders") and listing 12.06 ("Anxiety and obsessive-compulsive disorders").  *See* ECF No. [7] at 32; 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.04, 12.06.  ALJ Reynolds concluded that the "severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06."  *See* ECF No. [7] at 32.  She found the Paragraph B and Paragraph C criteria were not satisfied because Plaintiff had, at most, only "moderate" limitations in "understanding, remembering, or applying information"; "interacting with others"; "concentrating, persisting, or maintaining pace"; and "adapting or managing oneself." *See* ECF No. [7] at 32–33.

Because Plaintiff's impairments did not meet or equal any of the Listings in Appendix 1 of

the Regulations, ALJ Reynolds proceeded to step four of the SSA's five-step sequential analysis. At **step four**, she found Plaintiff had the RFC to perform "a full range of work at all exertional levels, but with the following nonexertional limitations: should not work climbing ladders, ropes, or scaffolds or at unprotested [sic] heights or operate dangerous machinery." *See* ECF No. [7] at 34. In making that finding, ALJ Reynolds "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," along with "the medical opinion(s) and prior administrative medical finding(s)." *See* ECF No. [7] at 34.

At the outset, ALJ Reynolds noted Plaintiff "alleged disabling symptoms from depression and anxiety," which resulted in "difficulty with memory, concentration, and dealing with others"; "difficulty consistently performing most activities of daily living independently"; and "side effects from her medications." *See* ECF No. [7] at 34. But while she found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *See* ECF No. [7] at 35. Instead, the "medical evidence of record," including the "mental status examination findings," "strongly support[ed] that" Plaintiff "is able to perform work consistent with" the RFC finding. *See* ECF No. [7] at 35.

To reach this determination, ALJ Reynolds looked to objective examination findings about Plaintiff's physical health and mental status, provider treatment notes, and Plaintiff's diagnoses. *See* ECF No. [7] at 35–38. The ALJ considered opinions from Plaintiff's "consultative psychologist" Manuel Alvarez, PhD; her "treating psychiatric source" Gabriel Sanchez, M.D.; her "primary care provider" Elder Nieto, M.D.; her "treating provider" psychiatrist James Cook, M.D.;

and several providers who treated Plaintiff during her hospitalizations and partial hospitalization programs. *See* ECF No. [7] at 35–38. In those opinions, the ALJ found varying levels of support for her conclusion that Plaintiff "is able to perform work consistent with the" RFC finding: Dr. Alvarez's objective examination findings and Dr. Sanchez's treatment notes, diagnoses, and objective examination findings provided strong support, while Dr. Nieto's treatment notes and objective examination findings provided general support. *See* ECF No. [7] at 35–38. Similarly, reports from providers who saw Plaintiff during in-patient treatment between April and July 2020 demonstrated Plaintiff can perform work consistent with the RFC finding, particularly "once stabilized on medications." *See* ECF No. [7] at 39.

The ALJ also explained how persuasive she found each of "the medical opinions and prior administrative medical findings" she considered. *See* ECF No. [7] at 38. Specifically, she found persuasive the "opinions of the state agency reviewing medical consultants at initial and reconsideration who opined" Plaintiff does "not have a severe impairment" because they were generally well supported and consistent with the other record evidence. *See* ECF No. [7] at 38. She found partially persuasive the opinions of those same consultants that Plaintiff had "moderate limitations" in many areas, but she determined Plaintiff "is more limited than opined with regard to understanding, remembering, and applying information and with regard to interaction with others." *See* ECF No. [7] at 39. She also found partially persuasive Dr. Alvarez's opinion that Plaintiff "is able to manage her own finances without supervision," though she took issue with the fact that the "opinion is generally not phrased in relevant terms." *See* ECF No. [7] at 40.

Finally, she found that Dr. Cook's opinion was not persuasive. *See* ECF No. [7] at 39–40. The ALJ explained that Dr. Cook's opinion was problematic because it "is generally not phrased in vocationally relevant terms as it does not generally specify the duration or exact nature of the

limitations." *See* ECF No. [7] at 40.  She noted Dr. Cook's opinion "is generally unsupported by his own limited objective examinations and treatment notes during the relevant period."  *See* ECF No. [7] at 40.  And she noted Dr. Cook's opinion is "generally inconsistent with the overall evidence of record," including the opinions of Dr. Alvarez, Dr. Sanchez, Dr. Nieto, and the group of providers who treated Plaintiff during her hospitalizations and in-patient care.  *See* ECF No. [7] at 40.  That was true because, while all the medical sources noted many areas of concern in Plaintiff's mental health, only Dr. Cook opined that she "was permanently medically totally disabled."[5]

After setting out Plaintiff's abilities and nonexertional limitations, *see* ECF No. [7] at 37–38, ALJ Reynolds concluded, consistent with a vocational expert's testimony at her hearing, that Plaintiff "is unable to perform past relevant work," *see* ECF No. [7] at 41.  Because Plaintiff lacked the RFC to perform past relevant work, the ALJ proceeded to ***step five*** of the SSA's five-step sequential analysis.  *See* ECF No. [7] at 41.  At step five, the ALJ found Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *See* ECF No. [7] at 42.  She based this conclusion on Plaintiff's "age, education, work experience," and RFC, along with the vocational expert's testimony that Plaintiff could perform work as a (1) laundry worker, (2) hand packer, and (3) store laborer.  *See* ECF No. [7] at 42.  Because Plaintiff could make a successful adjustment to those jobs, the ALJ concluded Plaintiff was not disabled under the relevant regulatory framework.  *See* ECF No. [7] at 42.  For that reason,

---

[5] Dr. Cook's opinion also differed from the other medical sources because he opined Plaintiff "was unable to drive and unable to perform the functions of caring for herself and her home"; "was extremely limited in aspects like understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and in her ability to adapt or manage oneself"; "would be able to maintain attention for less than five minutes before needing redirection, would be off task more than 25 percent of the workday," "would require enhanced supervision," and "would be unable to maintain socially appropriate behavior due to severe social anxiety and impaired cognition due to psychosis."  *See* ECF No. [7] at 39–40.

the ALJ determined Plaintiff "has not been under a disability, as defined in the" Act, "from June 5, 2020, through" January 18, 2024. *See* ECF No. [7] at 43.

## IV.    DISCUSSION

In Plaintiff's Motion, she asserts only one error: that ALJ Reynolds "erred by failing to adequately weigh and evaluate the medical opinion of Plaintiff's former psychiatrist, James Cook, M.D., pursuant to 20 C.F.R. § 404.1520c." *See* ECF No. [8] at 12.  She argues that the ALJ's "RFC and findings at step three" are "contradicted by" Dr. Cook's medical opinions and that the ALJ "provided an unsound basis to set aside Dr. Cook's opinion" because "the record does not support the inferences that she is attempting to draw," which means she did not create "a logical bridge between the evidence and her conclusions." *See* ECF No. [8] at 12, 19. Plaintiff argues the ALJ's "findings mischaracterize the record and rely on impermissible cherry-picking, or a selective review of the evidence that supports only her conclusions," so "a reasonable person could not accept her factual conclusions as adequate" given the record evidence.  ECF No. [8] at 12–13.

In Defendant's Motion, which also serves as his response to Plaintiff's Motion, the Commissioner contends "Plaintiff has failed to meet her burden" to "provide the relevant medical and other evidence to prove" her disability.  *See* ECF No. [9] at 5.  To support summary judgment in his favor, he argues that, in assessing Plaintiff's RFC, ALJ Reynolds "properly considered all of the relevant evidence before her, including the medical opinion evidence from Dr. James Cook," by "thoroughly review[ing] Dr. Cook's opinions, evaluat[ing] the supportability and consistency of those opinions, and cit[ing] substantial evidence supporting her finding that the opinions were not persuasive."  *See* ECF No. [9] at 5–6.  He notes ALJ Reynolds "posed a hypothetical question that incorporated all of the limitations included in the RFC," and the vocational expert "testified in response that such an individual could perform a significant number of unskilled jobs existing

in the national economy," which "constitutes substantial evidence supporting the ALJ's decision." *See* ECF No. [9] at 5.

In response to Plaintiff's Motion, the Commissioner argues ALJ Reynolds properly determined Dr. Cook's "opinions were not persuasive" because "the extreme limitations Dr. Cook assessed were unsupported by his own records and inconsistent with the other relevant evidence in the record." *See* ECF No. [9] at 11. He notes that "Plaintiff cites evidence that allegedly supports Dr. Cook's opinions" but that "issue is not whether the evidence might support Dr. Cook's opinions or Plaintiff's argument, but rather whether substantial evidence supports the ALJ's findings and decision," which it does. *See* ECF No. [9] at 11–12. As to Plaintiff's argument that ALJ Reynolds "did not create a 'logical bridge' between the evidence and her conclusions," the Commissioner explains that "the Eleventh Circuit recently rejected an argument that an ALJ link evidence to the RFC finding and explained that it only requires that the ALJ state with some clarity the reasons for the decision." *See* ECF No. [9] at 12.

In her Reply, Plaintiff contends the Commissioner used the wrong standard of review because he "overstates the deference that the Court is required to give" on "this particular question, which is not merely a factual question but a mixed question of fact and law." *See* ECF No. [10] at 1. She argues that ALJ Reynolds "did not provide any analysis" regarding supportability because she did "not explain why she believed" Dr. Cook's "opinion was generally unsupported" and that she "engaged in a selective form of evidentiary review to evaluate the factor of consistency." *See* ECF No. [10] at 4–6.

The Court denies Plaintiff's Motion, grants Defendant's Motion, and affirms the ALJ's Decision for three reasons. First, the ALJ adequately weighed and evaluated Dr. Cook's medical opinion. Second, substantial evidence supports the ALJ's decision. Third, the ALJ was not

required to articulate a logical bridge between the record evidence and her findings.

### A. The ALJ adequately weighed and evaluated Dr. Cook's opinion

The bulk of Plaintiff's argument focuses on the ALJ's finding that Dr. Cook's opinion was not persuasive because it was generally inconsistent with the rest of the record. Plaintiff argues that substantial evidence does not support this finding both because the record evidence aligns with Dr. Cook's opinion, *see* ECF No. [8] at 9–19, and because the ALJ erred in evaluating the supportability and consistency of Dr. Cook's opinion, *see* ECF No. [10] at 4–6.  To recap, the "supportability" factor requires the ALJ to analyze "the extent to which a medical source has articulated support for the medical source's own opinion," while the "consistency" factor requires the ALJ to consider "the relationship between a medical source's opinion and other evidence within the record."  *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

Starting with the supportability factor, Plaintiff contends the ALJ did not explain how she evaluated the supportability of Dr. Cook's opinion. The Court disagrees.  Discussing Dr. Cook's opinion, the ALJ explained that it was "generally not phrased in vocationally relevant terms as it does not generally specify the duration or exact nature of the limitations" Dr. Cook determined Plaintiff had.  *See* ECF No. [7] at 40.  The ALJ also explained Dr. Cook's "opinion is generally unsupported by his own limited objective examinations and treatment notes during the relevant period."  *See* ECF No. [7] at 40.  While the ALJ did not elaborate further, she did cite to record evidence in support of those conclusions.

That record evidence is Dr. Cook's 52-page medical file on Plaintiff. *See* ECF No. [7] at 856–908.  As Plaintiff herself admits, Dr. Cook's records "look incomplete or alternatively, Dr. Cook did not actually keep progress notes of his sessions with Plaintiff."  *See* ECF No. [8] at 14.

The Court's review of Dr. Cook's file confirms Plaintiff's admission.  In it, there are no examination summaries, progress notes, or other documents setting out what evaluations Dr. Cook performed over the course of his two years treating Plaintiff and what he concluded from those evaluations. *See* ECF No. [7] at 856–908.  Instead, Dr. Cook's file consists of handwritten medication and lab work prescriptions, lab results, insurance documents, communications with insurance companies about medications and treatments he requested for Plaintiff, the SSA's requests for information from Dr. Cook to evaluate Plaintiff's application for DIB, and Dr. Cook's response to a questionnaire from Citizens Disability, the entity that represented Plaintiff at the ALJ hearing.  *See* ECF No. [7] at 79, 856–908.

Within Dr. Cook's file, there are repeated references to Plaintiff having suicidal and homicidal thoughts (which he sometimes characterized as "intense"), severe OCD symptoms, and "psychosis."  *See* ECF No. [7] at 857, 861–65, 871–72, 876, 888, 890.  There is also Dr. Cook's February 2021 opinion Plaintiff was "totally medically temporarily disabled" and living with her in-laws because she was "unable to perform the functions of caring for herself and her home," *see* ECF No. [7] at 861, and his May 2022 opinion Plaintiff was "permanently medically totally disabled" because of "symptomatic Bipolar I with psychosis severe," which caused "severe psychotic cognitive disorder," "severe social anxiety," and "impaired cognition due to psychosis," *see* ECF No. [7] at 863–65.  What there is not, however, is any "articulated support" for those conclusions.  *See Rodriguez*, 2022 WL 807443, at *5.

While Plaintiff argues the ALJ's explanation on the supportability factor was conclusory, *see* ECF No. [10] at 4, the Court's review of the record evidence confirms that the ALJ's determination — that Dr. Cook's opinion is "generally unsupported by his own limited objective examinations and treatment notes," ECF No. [7] at 40 — is correct and complete. Because there

16

were no objective examinations and treatment notes in Dr. Cook's file, there was nothing more the ALJ could have said about them other than to note their absence.  For that reason, the Court concludes that substantial evidence supports the ALJ's determination and explanation of the supportability factor as to Dr. Cook's opinion.

Moving to consistency, Plaintiff argues the ALJ's "rosy" evaluation of that factor "mischaracterize[s] the record and rel[ies] on impermissible cherry-picking, or a selective review of the evidence that supports only her conclusions."  *See* ECF No. [7] at 12–13; ECF No. [10] at 4.  Again, the Court disagrees.  The ALJ's Decision carefully set out the opinions of at least four medical sources other than Dr. Cook — Dr. Alvarez, Dr. Sanchez, Dr. Nieto, and the group of providers who treated Plaintiff during her hospitalizations and in-patient care — and adequately articulated how Dr. Cook's opinion was "generally inconsistent" with each of those sources. *See* ECF No. [7] at 35–41.

For example, in contrast to Dr. Cook's opinion that Plaintiff was totally disabled by severe social anxiety and psychosis-driven impaired cognition, Drs. Alvarez, Sanchez, and Nieto opined Plaintiff was "essentially normal" despite some areas of concern.  These areas of concern included being tearful and having a constricted affect, an anxious/depressed mood, chronic suicidal ideation, questionable insight/judgment with ruminative/intrusive thoughts, and a "PHQ nine score" of "14 on one occasion." *See* ECF No. [7] at 35–37, 40.  But even so, Dr. Alvarez opined Plaintiff was "essentially normal with regard to cognition," ECF No. [7] at 35; Dr. Sanchez opined Plaintiff had "linear and logical associations and thought processes, no abnormal perceptions or thought content," and "grossly intact intellectual functioning, ECF No. [7] at 36; and Dr. Nieto opined Plaintiff "was in no acute distress, pleasant, alert, [and] oriented" and "had an appropriate mood and affect," ECF No. [7] at 37.  And the hospital providers opined that, once Plaintiff was stabilized

on medications, she had "substantially improved objective mental status examination findings." ECF No. [7] at 40.

Although Plaintiff argues the ALJ erred because she cherry-picked evidence that supports only her conclusions, *see* ECF No. [7] at 13, the Court sees no such thing.  In fact, as explained above, the ALJ noted that Plaintiff's hospital providers and Drs. Alvarez, Sanchez, and Nieto all recognized areas of concern during their treatment of Plaintiff, including chronic suicidal ideation. *See* ECF No. [7] at 36–37, 40.  But even with these areas of concern, Plaintiff's medical sources (other than Dr. Cook) concluded she had essentially normal cognition, logical thought processes, and grossly intact intellectual functioning, particularly when she was stabilized on medications. *See* ECF No. [7] at 35–41.  The overall opinion of those four other medical sources were consistent with each other; Dr. Cook's opinion was the outlier.  As a result, substantial evidence supports the the ALJ's finding that Dr. Cook's opinion was not persuasive because Dr. Cook's conclusions about Plaintiff's ability differ from the rest of the medical sources in the record.  *See Rodriguez*, 2022 WL 807443, at *5 (defining consistency as the relationship between a medical source's opinion and other evidence within the record).

Finally, as the ALJ explained, to ascertain the opinions of Dr. Alvarez, Dr. Sanchez, Dr. Nieto, and the in-patient providers, she looked to their objective examination findings on Plaintiff's physical health and mental status, their treatment notes, and their diagnoses.  *See* ECF No. [7] at 35–41.  But as noted above, the ALJ could not do the same when evaluating Dr. Cook's opinion because his medical file did not contain any examination summaries, progress notes, or other documents setting out what evaluations led him to conclude Plaintiff was psychotic and cognitively impaired to the point of disability.  *See* ECF No. [7] at 39–40, 856–908.  Thus, substantial evidence also supports the ALJ's finding that Dr. Cook's opinion was not persuasive because Dr. Cook's

differing conclusions are not founded on the same sort of objective evaluative techniques and documentation used or provided by the rest of the medical sources in the record. *See Rodriguez*, 2022 WL 807443, at *5.

For those reasons, the Court finds that substantial evidence supports the ALJ's determination and explanation of the consistency factor as to Dr. Cook's opinion. Accordingly, after carefully reviewing the ALJ's decision and the record, the Court also finds the ALJ did not misapply § 404.1520c and the applicable law when assessing the supportability and consistency of Dr. Cook's opinion.

### B. Substantial evidence supports the ALJ's decision

Furthermore, the record contains substantial evidence to support the ALJ's finding that Plaintiff is not disabled. As already thoroughly discussed above, substantial evidence supports the ALJ's determination that Dr. Cook's opinion was not persuasive because his own limited objective examinations and treatment notes did not support it and it was inconsistent with the rest of the record evidence. And after justifiably setting aside Dr. Cook's opinion, the remainder of the evidence demonstrated that Plaintiff, despite her limitations, has the RFC to perform a full range of work at all exertional levels.

That evidence includes the opinions of Dr. Alvarez, Dr. Sanchez, Dr. Nieto, and the group of providers who treated Plaintiff during her hospitalizations and in-patient care. *See* ECF No. [7] at 35–41. While the Court has discussed each of those opinions before, it will recap the most relevant parts here. First, Dr. Alvarez opined Plaintiff had essentially normal cognition. *See* ECF No. [7] at 35. Second, Dr. Sanchez opined Plaintiff had linear and logical associations and thought processes, no abnormal perceptions or thought content, and grossly intact intellectual functioning. *See* ECF No. [7] at 36. Third, Dr. Nieto opined Plaintiff was in no acute distress, was pleasant,

alert, and oriented, and had an appropriate mood and affect. *See* ECF No. [7] at 37. Fourth, the hospital providers opined that, once Plaintiff was stabilized on medications, she had a substantially improved mental status. *See* ECF No. [7] at 40. Each of these medical sources determined Plaintiff was essentially normal even though they all acknowledged her battle with chronic suicidal ideation. *See* ECF No. [7] at 36–37, 40.

Along with those medical opinions, the ALJ had the opinion of the vocational expert. "To determine the extent to which" Plaintiff's "limitations" would impact her ability to perform the "unskilled work" available in the national economy, the ALJ "asked the vocational expert whether jobs exist" for "an individual with the claimant's age, education, work experience, and" RFC. *See* ECF No. [7] at 42. After hearing the ALJ's hypothetical, the "vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations" like laundry worker, hand packer, and store laborer. *See* ECF No. [7] at 42. As Defendant points out, when an ALJ asks a vocational expert "a hypothetical question which comprises all of [a] claimant's impairments," the vocational expert's testimony in response to that hypothetical "constitute[s] substantial evidence." *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); ECF No. [9] at 5.

While Plaintiff argues that, as a "general proposition, Plaintiff's repeated involuntary psychiatric admissions and need for partial hospitalization . . . seem to support" that Plaintiff has (or at least has had) "extreme psychiatric symptoms and limitations," *see* ECF No. [8] at 15–16, the ALJ's Decision properly considered the specific evidence in the record to reach her conclusion that Plaintiff, despite her symptoms and limitations, is not disabled as defined in the Act. And even if, on a clean slate, the Court agreed with Plaintiff that Dr. Alvarez, Dr. Sanchez, Dr. Nieto, and the in-patient providers incorrectly characterized Plaintiff's exams because "no reasonable

mind could accept that" someone presenting with the features they identified — constricted affect, anxious/depressed mood, tearful, and questionable insight/judgment with ruminative/intrusive thoughts — was "essentially normal," *see* ECF No. [10] at 6, the Court may not substitute its judgment for that of Plaintiff's providers or the ALJ.  *See Winschel*, 631 F.3d at 1178.  Indeed, even if the evidence weighs against the ALJ's Decision, the Court must affirm if substantial evidence supports it.  *See Dyer*, 395 F.3d at 1210; *Bloodsworth*, 703 F.2d at 1239.  That is the case here.

### C.   The ALJ was not required to build a logical bridge to support her determination

Finally, Plaintiff argues the ALJ's bases for setting aside Dr. Cook's opinion were "unsound" because she failed to create "a logical bridge between the evidence and her conclusions."  *See* ECF No. [8] at 19.  But contrary to Plaintiff's argument, the ALJ's failure to build a logical bridge is not a basis on which the Court can reverse the ALJ's Decision or remand the case for further administrative proceedings.  As Defendant explained in his Motion, the "logical bridge" concept is a creation of the Seventh Circuit Court of Appeals, which the Eleventh Circuit has not adopted.  *See* ECF No. [9] at 12; *Sturdivant v. Soc. Sec. Admin., Comm'r*, No. 22-13952, 2023 WL 3526609, *3 (11th Cir. 2023).

Even if the Court were to apply the logical bridge concept to this case, the outcome would not change.  That is because creating a "'logical bridge' simply means that 'an ALJ must articulate at some minimum level, her analysis of the evidence.'"  *Moore v. Kijakazi*, No. 23-CV-206, 2023 WL 8187216, at *4 (M.D. Fla. Nov. 27, 2023) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).  Here, the ALJ identified the specific pieces of evidence she relied on when assessing Plaintiff's RFC and, because the quantum of evidence she relied upon was substantial, the Court finds that her decision and reasoning satisfies the "logical bridge" concept as articulated

by the Seventh Circuit.

## V.    CONCLUSION

For the reasons explained above, Plaintiff's Motion, **ECF No. [8]**, is **DENIED**; Defendant's Motion, **ECF No. [9]**, is **GRANTED**; and the ALJ's Decision is **AFFIRMED**.  The Clerk of Court is directed to **CLOSE** this case.  All pending motions are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers, in Miami, Florida, on September 29, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record